CRAIG H. MISSAKIAN (CABN 125202)
United States Attorney

MARTHA BOERSCH (CABN 126569)
Chief, Criminal Division

CHARLES F. BISESTO (CABN 271353)
Assistant United States Attorney

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: (415) 436-6405
    FAX: (415) 436-7234
    Charles.Bisesto@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO. CR 4:23-CR-00349 AMO |
| Plaintiff, | UNITED STATES' SENTENCING MEMORANDUM |
| v. | |
| ELVIN MELENDEZ-CRUZ, | Date: July 14, 2025<br>Time: 2:30 p.m.<br>The Honorable Araceli Martínez-Olguín |
| Defendant. | |

## I.    INTRODUCTION

In the spring and summer of 2023, the Federal Bureau of Investigation (FBI) identified and began investigating a Bay Area resident engaged in drug trafficking in Oakland and San Francisco. The individual was later identified as Jair Ramirez-Castillo. Over a seven-month period, Ramirez-Castillo sold more than two pounds of fentanyl to an undercover FBI agent. In July 2023, in an attempt to identify Ramirez-Castillo's suppliers, agents obtained a court-authorized wiretap permitting the interception of wire and electronic communications over Ramirez-Castillo's phone. Intercepts from that wiretap led to the identification of the defendant, Elvin Melendez-Cruz, as a fentanyl supplier and distributor operating out of a motel room in East Oakland.

As discussed in more detail below, over the course of several months, Melendez-Cruz supplied

significant quantities of fentanyl to others, including Ramirez-Castillo, while operating out of a motel room with a firearm, drug paraphernalia, and over 2.8 kilograms of fentanyl. His conduct was not aberrational; it was calculated, sustained, and dangerously indifferent to the public harm caused by fentanyl. For these reasons, a lengthy term of incarceration is warranted.

## II.  FACTS

In the Spring of 2023, the FBI began investigating Jair Ramirez-Castillo for his drug dealing activities in the Bay Area. Presentence Investigation Report ("PSR") ¶ 17. Using a confidential source, the FBI conducted two controlled purchases of eight ounces of fentanyl from Ramirez-Castillo in January and March of 2023. PSR ¶¶ 15, 16. Then, in early July of 2023, the FBI obtained judicial authorization to intercept Ramirez-Castillo's phone conversations (both electronic and wire communications) through a court order (*see* CR 23-91421 JSC). PSR ¶ 17. Agents began intercepting wire and electronic communications on July 7, 2023 and quickly confirmed that Ramirez-Castillo was a professional drug dealer. PSR ¶ 18. On July 10, 2023, the FBI intercepted an outgoing text message from Ramirez-Castillo, regarding purchasing narcotics, to the user of a phone number ending in -8900. PSR ¶ 19. The FBI later identified the user of the -8900 number as Elvin Melendez-Cruz. PSR ¶¶ 22, 24. At the time, Melendez-Cruz was on probation in Alameda County for a conviction related to drug dealing.[1] PSR ¶ 23. In a conversation with the FBI, his Alameda County probation officer confirmed the -8900 number belonged to Melendez-Cruz. PSR ¶ 24.

During the July 10, 2023 text message conversation between Ramirez-Castillo and Melendez-Cruz, Ramirez-Castillo requested "yellow fentanyl" and Melendez-Cruz confirmed he could sell that specific narcotic. PSR ¶ 19. On July 13, 2023, agents again intercepted Ramirez-Castillo communicating with Melendez-Cruz – in this instance, Ramirez-Castillo called Melendez-Cruz and asked for an ounce of "clean" narcotics. PSR ¶ 20. Melendez-Cruz again confirmed he could supply Ramirez-Castillo, and the parties agreed to meet in ten minutes. *Id*.

---

[1] Although Melendez-Cruz was convicted of violating Penal Code § 32, accessory after the fact, the original charges in his Alameda County case were related to the possession of large quantities of drugs for sales purposes. PSR ¶ 49. In fact, at the time Melendez-Cruz was arrested on these charges, he was seen by police officers attempting to dispose of heroin in a toilet in his residence. *Id*.

UNITED STATES' SENTENCING MEMO.            2
CR 4:23-349 AMO

Toll analysis showed that there were 84 contacts between Melendez-Cruz and Ramirez-Castillo from January 2023 through July 2023, suggesting Melendez-Cruz served as a primary source of supply for Ramirez-Castillo. PSR ¶ 21.

In July of 2023, agents obtained a cell phone ping warrant for Melendez-Cruz's phone. PSR ¶ 26. Cell site location information showed Melendez-Cruz regularly traveled to the Tenderloin District of San Francisco, late at night, and returned to his home in Oakland early the following morning – activity consistent with the routine of a drug dealer. *Id*.

Then, on July 19, 2023, while conducting surveillance on Melendez-Cruz after he left an appointment with Alameda County Probation, agents followed him to a motel room in Oakland. PSR ¶ 28. On July 21, 2023, agents from the California Department of Corrections and Rehabilitation Special Service Unit conducted surveillance at the motel and on-viewed Melendez-Cruz exit his hotel room on multiple occasions to engage in suspected hand-to-hand drug transactions with customers in the parking lot. PSR ¶ 29.

On August 3, 2023, FBI agents executed a search warrant on Melendez-Cruz's room in the motel. PSR ¶ 30. Inside the motel room, agents found Melendez-Cruz and a female in a bed. *Id*. Next to the side of the bed where Melendez was first seen, agents found multiple cell phones, including a cell phone that rang when the officers called the -8900 number. *Id*. Additionally, inside the room, agents recovered 2,809.2 grams of fentanyl, a 9mm Polymer pistol with a loaded magazine, $12,506, scales, a cutting board and a razor. *Id*. Melendez-Cruz was subsequently arrested by the FBI.

On August 4, 2023, a criminal complaint, charging Melendez-Cruz with Illegal Use of a Communications Facility in violation of 21 U.S.C. § 843(b), was signed by the Honorable Donna M. Ryu, Chief Magistrate Judge. Dkt. 1. Melendez-Cruz was brought to Magistrate Court on August 7, 2023 for his initial appearance and pled not guilty to the sole charge in the complaint. Dkt. 2. On October 10, 2023, a two-count Indictment was issued by a grand jury, charging Melendez-Cruz with a violation of 21 U.S.C. § 843(b), Unlawful Use of a Communications Facility, and 21 U.S.C. §§ 841(a)(1) and (b)(1)(B)(vi), Possession with Intent to Distribute 40 Grams and More of Fentanyl. PSR ¶ 1, Dkt. 10. On November 7, 2023, Melendez-Cruz was arraigned on the Indictment, entered

pleas of not guilty and was ordered detained pending the outcome of the case. Dkt. 13.

On January 27, 2025, Melendez-Cruz pled guilty to Counts One and Two of the Indictment. PSR ¶ 2, Dkt. 52. Melendez-Cruz's guilty plea was made absent an agreement with the government. PSR ¶ 3.

### III. SENTENCING GUIDELINES CALCULATIONS

The government agrees with U.S. Probation's finding that Melendez-Cruz is responsible for the fentanyl that was found in his hotel room during the FBI search on August 3, 2023. PSR ¶ 36. The government also agrees that Counts 1 and 2 are grouped for guideline calculation purposes because the offense level for both charges is determined largely on the quantity of the substance involved (in this case, the fentanyl found in his motel room). PSR ¶ 35 and U.S.S.G. §3D1.2(d). As a result, the Base Offense Level for Melendez-Cruz's conduct is properly calculated at 32. PSR ¶ 36.

The government agrees that pursuant to U.S.S.G. §2D1.1(b)(1), Melendez-Cruz should receive a two-level increase for possession of a firearm inside his motel room. PSR ¶ 37. Melendez-Cruz should, however, be provided a three-level reduction pursuant to U.S.S.G. §§ 3E1.1(a) and (b) for acceptance of responsibility. PSR ¶¶ 43, 44. Finally, the government agrees that Melendez-Cruz's Criminal History Category is II. PSR ¶ 45.

Based upon an adjusted offense level of 31 and a criminal history category of II, the guidelines imprisonment range is 121 to 151 months.

#### A. Applicable Law

The Court must impose a sentence sufficient, but not greater than necessary, to reflect the seriousness of the offense, deter others from committing similar crimes, protect the public from the defendant, and rehabilitate the defendant. 18 U.S.C. § 3553(a)(2); *United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008). Section 3553 sets forth several factors that the Court must consider in determining a just sentence: (1) the nature and circumstances of the offense and the defendant's history and characteristics; (2) the purposes of sentencing; (3) the kinds of sentences available; (4) the Guidelines range for sentences; (5) any pertinent policy statements; (6) the need to avoid unwarranted sentencing disparities; and (7) the need to provide restitution to any victims of the offense. 18 U.S.C. § 3553(a);

*Carty,* 520 F.3d at 991. The Guidelines should be the starting point and the initial benchmark. *Gall v. United States*, 552 U.S. 38, 49 (2007). Though the guidelines are not binding, they "reflect a rough approximation of sentences that might achieve section 3553(a)'s objectives." *Rita v. United States,* 551 U.S. 338, 350 (2007).

### B. Recommended Sentence

The government agrees that there are circumstances that merit consideration by this Court pursuant to 18 U.S.C. § 3553(b)(1). Namely, the government acknowledges Melendez-Cruz's difficult upbringing, including being raised by his maternal grandparents, in a home with no running water or electricity and minimal necessities, after his mother and father abandoned him. PSR ¶ 65. The government certainly believes that Melendez-Cruz did, in fact, immigrate to the United States to escape the poverty in Honduras and to lend financial support to his family, including his sick grandfather. PSR ¶ 66. Even more, as a father (PSR ¶ 67), Melendez-Cruz *should be* incentivized to turn his life around so he can better support his young son. Considering Melendez-Cruz's own relatively young age (28-29 at the time of the conduct in this case), difficult background and young family, the government believes there is a basis for the Court to depart below the applicable Guidelines range in this case.

Nevertheless, when considering the nature and circumstances of his offense *and* his history, Melendez-Cruz's role in the drug trade is highly troubling. First, the nature of the offense—trafficking in massive quantities of fentanyl while armed—is gravely serious. Fentanyl is a synthetic opioid 50 times more potent than heroin and responsible for tens of thousands of overdose deaths annually. The amount seized in this case was sufficient to cause fatal overdoses for thousands of individuals.

With respect to his history, Melendez-Cruz was not a naïve or incidental player. He was on probation at the time of this offense, with a prior felony conviction and a criminal history that includes years of drug-related conduct. He knowingly returned to that criminal conduct, despite the leniency afforded to him in his prior sentencing in Alameda County. And, his use of a motel room as a drug base, combined with evidence of routine nightly drug dealing in the Tenderloin, and his possession of a loaded firearm, reflects both sophistication and danger. Melendez-Cruz made his living as a professional drug dealer.

Under 18 U.S.C. §§ 3553(a)(2)(B), the Court should also consider the need for the sentence imposed to afford adequate deterrence to criminal conduct.  In this case, deterrence should weigh heavily on the Court's sentencing determination.  General deterrence is particularly vital in fentanyl cases, given the ease with which dealers can profit by flooding communities with such a lethal product.  A significant sentence sends a clear message: individuals who endanger lives through high-volume fentanyl distribution and armed drug trafficking will face serious consequences.  But specific deterrence, in this case in particular, is also critical.  Melendez-Cruz has demonstrated a willingness to violate the law, even after prior convictions and while on probation.  And, as his criminal history suggests, Melendez-Cruz has engaged in drug dealing activities for years, dating as far back as 2015 (*see* PSR ¶ 56).   Incarceration is the only means of stopping this repeated behavior and preventing future harm.

Simply put, Elvin Melendez-Cruz was not a peripheral player in the fentanyl trade—he was a mid-level trafficker operating while on probation, armed with a loaded firearm, and distributing a drug responsible for catastrophic public harm.  A substantial custodial sentence is necessary to reflect the seriousness of the offense, deter future conduct, and protect the community.  For these reasons, the government believes that the Court should impose a sentence of 84 months' imprisonment (7 years).  Such a sentence satisfies the factors enumerated in 18 U.S.C. § 3553(a) by acknowledging the harm Melendez-Cruz has caused and making it clear to the community that those who contribute to the blight facing the Bay Area by participating in the drug trade will be seriously punished.

//
//
//

### IV. CONCLUSION

For the foregoing reasons, the government respectfully recommends that the Court sentence Melendez-Cruz to a sentence of 84 months of imprisonment on Count Two. The government further recommends the Court sentence Melendez-Cruz to a term of 48 months of imprisonment on Count One to run concurrent to the sentence imposed in Count Two. The government also requests that the Court impose a four-year term of supervised release, with each of the terms and conditions recommended by U.S. Probation.

DATED: July 7, 2025

Respectfully submitted,

CRAIG H. MISSAKIAN
United States Attorney

  /s/ *Charles F. Bisesto*
CHARLES F. BISESTO
Assistant United States Attorney